UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA MCENROE,<br><br>        Plaintiff,<br><br>    v.<br><br>LOCAL 9400, COMMUNICATION WORKERS OF AMERICA, AFL-CIO, et al.,<br><br>        Defendants. | Case No. 14-cv-03461-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 41 |

Pending before the Court is a motion for summary judgment filed by Defendants Local 9400, Communications Workers of America, AFL-CIO; District 9, Communications Workers of America, AFL-CIO; and Communications Workers of America, AFL-CIO (collectively, the "Union"). For the reasons articulated below, Defendants' motion is GRANTED.[1]

**I.   BACKGROUND**

Plaintiff filed this lawsuit on August 16, 2012 in Sonoma County Superior Court. Dkt. No. 1-2. Defendants removed the case to federal court on July 30, 2014, after being served on July 15, 2014. Dkt. No. 1. On August 27, 2014, Plaintiff filed the operative complaint, which asserts a cause of action for breach of the Defendants' duty of fair representation as to Plaintiff's termination grievance under § 301 of the Labor Management Relations Act ("LMRA").[2] Dkt. No. 11.

The following facts are undisputed. Plaintiff Sara McEnroe was hired by AT&T Mobility

---

[1] Defendants also filed a request for judicial notice. Dkt. No. 46. Because the Court does not rely on any of the documents Defendants seek to have judicially noticed, the Court DENIES AS MOOT Defendants' request.

[2] In her complaint, Plaintiff also asserted a second cause of action for breach of the duty of fair representation as to her sexual harassment grievance. Dkt. No. 11. Plaintiff voluntarily dismissed this claim on November 7, 2014. Dkt. No. 26.

1   as a Retail Sales Consultant in 2007.  Dkt. No. 55 ("McEnroe Decl.") ¶ 2.  During her
2   employment, Plaintiff complained of sexual harassment by her supervisor.  *Id.* ¶ 3.  Plaintiff took
3   substantial leave from work due to anxiety caused by the harassment.  *Id.*  On September 19, 2009,
4   AT&T terminated her employment due to unexcused absences.  *Id.* ¶ 10.  That same day,
5   Defendants filed a grievance to contest Plaintiff's termination.  *Id.* ¶ 11.  Defendants represented
6   Plaintiff at various stages of the grievance process under the collective bargaining agreement that
7   governed Plaintiff's employment with AT&T.  Dkt. No. 43 ("Estes Decl.") ¶ 6.

In their motion, Defendants contend that the undisputed facts demonstrate that no breach of the duty of fair representation occurred.  Dkt. No. 41 ("Mot.") at 15-22.  Additionally, Defendants contend that the undisputed evidence demonstrates that Plaintiff's claims are time-barred.  *Id.* at 22.  Following the hearing on the motion on November 12, 2015, the Court ordered Plaintiff to file supplemental briefing to ensure that the evidentiary record was clear and complete.  Dkt. No. 64.  Specifically, Plaintiff was ordered to articulate "(1) when the alleged breach of the duty of fair representation occurred; (2) what constituted the alleged breach of the duty of fair representation; and (3) why there is a genuine dispute of material fact regarding whether Defendants breached the duty of fair representation."  *Id.* at 2.  Plaintiff timely filed her supplemental brief on November 30, 2015.  Dkt. No. 65 ("Supp. Opp.").

## II.   DISCUSSION

### A.   Legal Standard

Summary judgment is proper where the pleadings and evidence demonstrate "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The moving party bears "the initial responsibility of informing the district court of the basis for its motion."  *Celotex*, 477 U.S. at 323.  To satisfy this burden, the moving party must

demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322. To survive a motion for summary judgment, the non-moving party must then show that there are genuine factual issues that can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). To do so, the non-moving party must present specific facts creating a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.

The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.* Moreover, the court is not required "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

### B. 2009 Actions By Steve Estes

To the extent Plaintiff's claim is based on allegedly dishonest conduct by Union representative Steve Estes in 2009, it is barred by the statute of limitations.

To prevail on her § 301 claim, Plaintiff must show that (1) her termination was contrary to the terms of the collective bargaining agreement; and (2) the union breached its duty of fair representation. *DelCostello v. Int'l Bhd. Teamsters*, 462 U.S. 151, 165 (1983). To find a breach of the duty of fair representation, a court "must determine either that the union conduct at issue is a discriminatory or bad faith exercise of judgment, or is an arbitrary (meaning wholly irrational, inexplicable, or unintentional) action that substantially injured an employee." *Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 880 (9th Cir. 2007). To show that the Union's conduct was discriminatory, Plaintiff must offer "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971). To show that the Union acted in bad faith, Plaintiff must present "substantial evidence of fraud, deceitful action or dishonest conduct." *Id.* at 299 (internal quotation marks

omitted). This is a high bar, as "[t]he Supreme Court has long recognized that unions must retain wide discretion to act in what they perceive to be their members' best interests." *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985).

A six-month statute of limitations applies to Plaintiff's "hybrid" § 301 claim. *DelCostello*, 462 U.S. at 165, 172. The limitations period begins to run when a plaintiff "knew, or should have known, of the defendant's wrongdoing and can successfully maintain a suit in the district court." *Allen v. United Food & Commercial Workers Int'l Union*, 43 F.3d 424, 427 (9th Cir. 1994). Under Ninth Circuit law, "there is no 'continuing violations' theory for hybrid claims." *Tapia v. Local 11 Hotel Emps. & Rest. Emps. Union*, 11 F. App'x 941, 942 (9th Cir. 2001) (citing *Harper v. San Diego Transit Corp.*, 764 F.2d 663, 669 (9th Cir. 1985)).

While Plaintiff's counsel failed to clearly articulate at the motion hearing when the predicate breach of the duty of fair representation is alleged to have occurred, Plaintiff's briefing overwhelmingly points to actions taken and statements made by Mr. Estes in 2009 as the basis for her claim. In her opposition, Plaintiff argues that "Defendant Breached its Duty of Fair Representation When its Representative Steve Estes Acted in Bad Faith and Attempted to Cover up His Mistake." Dkt. No. 49 ("Opp.") at 13. In her supplemental brief, Plaintiff confirms that the alleged "breach of the duty of fair representation centers on Mr. Estes' unethical conduct and arbitrary handling of [Plaintiff's] termination grievance and the Union's lackluster investigation." Supp. Opp. at 2. Plaintiff bases her contentions regarding Mr. Estes on the following facts:

- In June 2009, Plaintiff received a letter from her employer stating that she should return to work on June 18, 2009. Dkt. No. 51 ("Miller Decl."), Ex. 13.

- Plaintiff did not return to work because she was advised by Mr. Estes that she did not have to go back if she was uncomfortable about returning while the appeals process for her harassment grievance was ongoing. McEnroe Decl. ¶ 4.

- On August 21, 2009, Mr. Estes told Plaintiff she could return to work on September 1, 2009. McEnroe Decl. ¶ 8.

- Unbeknownst to Plaintiff, AT&T decided to terminate her employment on or around August 21, 2009. Supp. Opp., Ex. 3 to Supp. Miller Decl.

4

- On August 31, 2009, AT&T Manager Ward Sorrick called Plaintiff and told her not to come back to work on September 1.  McEnroe Decl. ¶ 9.

- On September 19, 2009, Plaintiff was terminated by her employer on account of unexcused absences in violation of the attendance policy.  McEnroe Decl. ¶ 10.

The Court need not reach the question of whether the above-listed facts are sufficient to create a genuine dispute of material fact regarding whether Defendants breached their duty of fair representation because, even assuming they are, Plaintiff's claim based on these facts is time-barred.  Plaintiff's supplemental briefing makes clear that the heart of her claim is grounded in events that occurred in or before October 2009—almost three years before this action was filed, and well beyond the six-month statute of limitations.  Accordingly, to the extent Plaintiff's claim is based on the actions taken and statements made by Mr. Estes in late 2009, it is barred by the statute of limitations.

### C.     Other Bases For Breach Of The Duty Of Fair Representation

Defendants have presented significant evidence to support their argument that they did not breach the duty of fair representation as a matter of law.  To the extent Plaintiff bases her claim on events occurring within the statute of limitations period, the Court finds that Plaintiff has not presented evidence regarding these events that creates a genuine dispute of material fact regarding whether Defendants breached the duty of fair representation.[3]

Construing Plaintiff's briefing charitably, she appears to assert three other grounds for the alleged breach of Defendants' duty of fair representation.  First, Plaintiff argues that the Union conducted a "lackluster" investigation.  Supp. Opp. at 2.  In support, Plaintiff contends that, following the interview of Plaintiff and her supervisor after Plaintiff's termination, the Union failed to conduct any additional witness interviews between November 2009 and September 2012 and thereby unreasonably delayed the investigation.  Plaintiff does not present any evidence of prejudice, nor does she present specific evidence demonstrating that any purported delay was

---

[3] The Court notes that, aside from the actions taken by Mr. Estes described in the previous section, the bases for Plaintiff's claim occurred after she filed her initial complaint in August 2012. Indeed, the alleged "final breach," *see* Supp. Opp. at 1, did not occur until February 25, 2015, six months after the filing of the operative amended complaint. This timeline raises substantial notice and Rule 11 concerns. To be thorough, the Court will address all colorable arguments raised by Plaintiff, even those that plainly arose only after she brought suit.

discriminatory, arbitrary, or done in bad faith. Defendants present evidence that they 1) conducted an investigation immediately following Plaintiff's termination, *see* Mot. at 2-3; 2) decided on the basis of that investigation that they would not prevail in arbitration on Plaintiff's termination grievance, Dkt. No. 44-4; and 3) agreed to pursue the arbitration of the grievance following Plaintiff's appeal, *see* Dkt. No. 45-2, Dep. Ex. 6. Indeed, it was Plaintiff who requested that the arbitration scheduled for August 2011 be suspended while her civil lawsuit was pending in state court. Dkt. No. 45, Ex. A at 38:23-39:24 & Dep. Ex. 7. On June 4, 2012, Plaintiff requested that the arbitration proceedings resume, and Defendants subsequently scheduled an arbitration hearing in September 2012. Dkt. No. 45-7. Based on these undisputed facts, the Court finds that Plaintiff has failed to carry her burden to present specific evidence creating a genuine factual dispute regarding whether the Union's investigation was discriminatory, arbitrary, or conducted in bad faith.

Second, Plaintiff appears to contend that a September 13, 2012 meeting with Union representative Valerie Reyna was conducted in bad faith. *See* Opp. at 9-10. Plaintiff makes a number of assertions in her opposition regarding the allegedly adversarial and hostile nature of this meeting. *Id.* However, Plaintiff does not cite to evidence for most of these assertions, and where she does include citations the evidence does not support her assertions. *See, e.g.*, Opp. at 10:5-7 (stating that "Reyna repeatedly belittled and minimized the claims Plaintiff was asserting and instead suggested the myriad of ways in which [the] harassment [by Plaintiff's supervisor] may have been Plaintiff's fault," and failing to cite to evidence); *id.* at 10:7-10 (stating that "Reyna suggested that [Plaintiff's supervisor's] outrageous conduct may have been because of some speculative poor work performance by Plaintiff because her clothing may not have been appropriate or because her nail polish or hair style was not appropriate," and citing as evidence Plaintiff's deposition testimony that she did not "remember the exact questions" asked by Ms. Reyna about Plaintiff's supervisor's comments on her appearance, but that she "felt very much like [she] was being interrogated by somebody, and [Ms. Reyna] was being very nonfriendly towards" her). The Court again finds that Plaintiff has failed to carry her burden to present specific evidence creating a genuine factual dispute as to whether the Union's investigation was

conducted in good faith.

Finally, Plaintiff argues that the Union breached its duty of fair representation by "flip-flop[ping]" its decision whether to arbitrate her termination grievance. Opp. at 17. In support, Plaintiff presents the following evidence:

- On July 16, 2010, following its initial investigation, the Union concluded that it would not prevail in arbitration on Plaintiff's termination grievance. Miller Decl., Ex. 20.

- On August 24, 2010, after Plaintiff appealed the July 16 determination, the Union sent Plaintiff a letter stating that it had reviewed her appeal and would submit the case to arbitration. Miller Decl., Ex. 22.

- On October 16, 2012, the Union "decided not to arbitrate and . . . cancelled the" arbitration hearing scheduled for November 2012. Miller Decl., Ex. 28.

- On November 5, 2013, following additional investigation, the Union reiterated its conclusion that it did "not believe that it [could] proceed to arbitration" on Plaintiff's termination grievance and described the basis for that conclusion in a four-page letter. Miller Decl., Ex. 31.

- On April 22, 2014, the Union sent Plaintiff a seven-page letter stating that it had "concluded the review" of the termination grievance and summarizing the basis of its denial of the grievance. Miller Decl., Ex. 33.

- Plaintiff unsuccessfully appealed the denial several times in late 2014 and early 2015. Miller Decl., Exs. 36-41.

- The Union sent Plaintiff a letter on February 25, 2015 stating that Plaintiff had "exhausted [her] internal appeal procedures and there is no further action to be taken." Supp. Opp., Ex. 1 to Supp. Miller Decl.

Rather than demonstrating a bad faith, discriminatory, or arbitrary investigation of Plaintiff's grievance, the above evidence tends to show that Defendants thoroughly investigated the circumstances of Plaintiff's termination, considered her appeals in good faith, and ultimately concluded that she would not prevail at arbitration. *See Peterson*, 771 F.2d at 1254 ("It is for the union, not the courts, to decide whether and in what manner a particular grievance should be pursued."). Plaintiff cannot successfully oppose Defendants' motion for summary judgment on the basis of characterizations alone; rather, she must come forward with specific evidence that

7

1 creates genuine disputes of material fact regarding whether Defendants' conduct was arbitrary,
2 discriminatory, or in bad faith.  Even making all reasonable inferences in her favor, as it must at
3 this stage, the Court again finds that Plaintiff has failed to carry that burden.  *See Coles v. Aramark*
4 *Sports & Entm't Grp.*, 290 F. App'x 670, 671 (9th Cir. 2008) (affirming district court's grant of
5 summary judgment in favor of union defendant because the plaintiff failed to "allege
6 discriminatory conduct," "adduce the substantial evidence of fraud, deceitful action or dishonest
7 conduct required to establish bad faith," or show that the union acted arbitrarily where it
8 "conducted the requisite minimal investigation prior to deciding not to submit [the plaintiff's]
9 grievance to arbitration") (internal quotation marks omitted).

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.  The clerk shall close the file.  The parties shall bear their own costs of suit.

**IT IS SO ORDERED.**

Dated: December 22, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge